[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
On February 12, 1987, the plaintiff entered into a contract with the named defendant to do various work in the construction of a house on Andrews Mountain Road in Naugatuck. The work contemplated earth moving such as excavation, back filling, grading etc. and also construction of the foundation and installation of a septic system and a driveway. The plaintiff entered into the premises and commenced to furnish materials and to render services on February 14, 1987. On April 30, 1987, a mortgage of the premises from the named defendant to the defendant, Citytrust, was recorded on the land records. No waiver of lien was procured from the plaintiff in connection with this mortgage. The work continued until sometime in August, 1987, with occasional short breaks while other contractors did work that had to be done before the plaintiff could proceed. The plaintiff had by that time completed much of the work but, although the septic tank was in place, nothing else had been done with the septic system. There also remained final grading and the driveway. In mid 1987, the named defendant requested the plaintiff to suspend work. The stated reason was to the effect that he had run out of cash and would not resume construction until he had a buyer for the premises. The plaintiff checked with Russo on a frequent basis as to the situation and the answer always was that when a buyer was obtained, he would have the plaintiff finish the work. At some point in time the plaintiff removed his equipment from the premises. In January, 1989, Russo informed the plaintiff that he had a buyer and requested that it return to the premises and complete the work, which it did. The original contract called for the installation of a septic system in accordance with unidentified plans or specifications. However, in fact, the plaintiff's bid was made based upon a design for a septic system shown on a survey dated July 12, 1985 and entered as defendant's exhibit 5. The Naugatuck Valley Health District found this plan unacceptable and required a new plan which is shown on a survey dated June 28, 1989 and entered as plaintiff's exhibit 6. This required digging up and relocating the septic tank, some changes in the construction of the leaching field, the construction of a berm, and movement of a significant amount of fill. The District CT Page 2761 also required that the work be monitored by an engineer. At the request of Russo, the plaintiff obtained and paid for the services of a surveyor to prepare the acceptable plan, also obtained and paid for the services of an engineer to do the monitoring and obtained and paid for the necessary permit. The survey of June 28, showed the septic system as installed. The plaintiff finished work on June 29, 1989. On June 30, 1989, the plaintiff executed a mechanic's lien reciting a commencement date of February 14, 1987 and an ending date of June 29, 1989. It was recorded on the Naugatuck Land Records on July 3, 1989. The sheriff's return states that notice of intention to claim lien was served on Russo on June 30, 1989 and a copy of the lien was served on him on July 3, 1989. A copy of the lien was also attached to the complaint.
The proposal of the plaintiff which constituted the contract set a price of $17,350 with cost of fill and bank run gravel to be extra. The cost of the survey required by the health district was $800; the engineer was $1,857.50; rental of equipment to accomplish the grading and construction of a berm required by the health district was $350; material required for the leaching field was $145.99; trucking in the necessary fill was $4,392; equipment that had to be rented to perform the work was $1,485; gravel for the septic system cost $4,069; the Naugatuck Valley Health District permit cost $50; soil testing required by the district cost $215; gravel required for the work done in 1987 cost $5,838; the plaintiff has not been paid for these items which total $19,202.49. Russo was informed of the charges and never protested. With the exception of the 1987 gravel, the plaintiff has been paid for all work done before the suspension of work in 1987. He claims the other items as extras because of the change in plans for the septic system. Those changes were never reduced to a written agreement despite the provision in the contract that "(a)ny alteration or deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate." Russo knew of the changes, requested them, and accepted the benefit of them. On this state of facts the validity, priority and amount of the lien have been attached.
One ground of attack is because the changes were not reduced to writing despite the requirement in the contract. As noted, Russo knew of the changes, requested them, and accepted the benefit of them. It would, therefore, be unconscionable to permit him to prevail on that ground. As to the other lienors, I have serious reservations as to their standing to raise such an issue as they were not parties to the contract. In any event the mechanic's lien statutes make no reference to a contract. To have the right to a lien requires only that the claimant has furnished materials or rendered services in the construction of a building or any of its appurtenances as authorized by the owner. CT Page 2762 Connecticut General Statutes Section 49-33.
A much more serious attack is that because of the substantial hiatus between the suspension of work in mid 1987 and its resumption in January, 1989, the ninety day period for recording the lien began to run at the time of suspension of the work. This ignores the facts that the suspension was at Russo's request, that he stated that he was not abandoning the project, but had every intention of having the job completed as soon as he obtained a buyer, that the plaintiff frequently and consistently inquired of Russo as to status, promptly resumed work when Russo gave the go ahead, and then performed and furnished substantial work and material. This situation is in no way comparable to that where a contractor returns to a job to do something minor or trivial or where the contractor abandoned a job and then returned in an attempt to revise an expired lien.
Another serious attack is that because the changes in the septic system were extensive, this situation should be regarded as two separate contracts, one for the work suspended in mid 1987 and the other for work resumed in January, 1989 so that lien rights as to the earlier work had long since expired and that the lien dates only from the start of the later work. Such a construction would wreak havoc because it would mean that every change order would knock out lien rights preexisting the change order. The contract was to install a septic system and that is exactly what was done. If the change order was to install a swimming pool, something never before contemplated, that would probably be a new contract, but that is not the case here.
One of the defendants has raised the point that the plaintiff's lien was not entered in evidence and marked as an exhibit. That might well have been the better practice, but a copy of the lien was attached to the complaint and as above noted, the sheriff's return states that a copy was served on Russo and filed with the Naugatuck Town Clerk. Therefore, it is part of the file. "The trial court may take judicial notice of all papers forming a part of the file of the case and use them for any proper purpose." Nichols v. Nichols, 126 Conn. 614, 620.
Based on all of the above, I find that the plaintiff's lien is valid and extends from February 14, 1987 to June 29, 1989 and therefor is prior in right to the Citytrust mortgage recorded April 30, 1987.
Another mechanic's lien on the premises is that of Nick Tedesco Plumbing which alleges a starting date of March 24, 1987. However, in a companion case, Nick Tedesco Plumbing v. Francis J. Russo et al, #96202, Superior Court, Judicial District of Waterbury, I have heretofore ruled that the correct starting date CT Page 2763 of that lien is March 6, 1989. Foresite, Tedesco and Russo, among others, are parties to both that action and this one, so that effective date is res adjudicata.
Based on the pleadings, the first law day is for Frank J. Russo, Jr. as the owner; the second is for Richard and Dorothy Holmes as persons in possession; the third is for Citytrust pursuant to its attachment recorded June 19, 1989; I am not at all sure that Caldwell Banker has a right of redemption because of it having recorded on April 11, 1989 an exclusive right to sell, but I assume no one would object to it being assigned a law day, so out of an excess of caution, it is given the fourth law day; the fifth law day is assigned jointly and severally to the other mechanic's lienors, Carreira Electric, May 27, 1987, and Nick Tedesco Plumbing and Heating, March 6, 1989; and the sixth law day to Citytrust for its mortgage recorded April 30, 1987.
At a hearing before Judge Rulawiz, she found the value of the premises as of June 16, 1990 to be $159,000; at a hearing before me in early January, 1991, an appraiser valued the premises at $124,000; Russo as the owner placed a value on it of $148,000, again in early January, 1991. Based only on the pleadings and Foresite's testimony as to its bills, it appears that encumbrances on the property exceed $140,000, so no matter which valuation I accept, the equity is either minimal or non-existent and therefore a relatively short law day is in order. Nevertheless, there are a number of parties involved and they should be given some latitude in assessing their situation. I therefore set the first law day as Monday, May 6, 1991 and succeeding days excluding Saturday and Sunday.
The appraiser's fee of $250 is approved and may be included in the bill of costs. Judgment for the plaintiff in accordance with the foregoing may be entered as above noted, I find the debt due the plaintiff and secured by its lien to be $19,202.49, with legal interest from July 3, 1989.
J. HEALEY, STATE TRIAL REFEREE